2003-NMSC-003

61 P.3d 185

**Gilbert LOPEZ, Petitioner–Appellee,**

v.

**Tim LeMASTER, Warden, Respondent–Appellant.**

**No. 27,012.**

Supreme Court of New Mexico.

Dec. 19, 2002.

Patricia A. Madrid, Attorney General, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellant.

Phyllis H. Subin, Chief Public Defender, Jennie Lusk, Assistant Public Defender, Santa Fe, NM, for Appellee.

## OPINION

MINZNER, Justice.

{1} The State appeals directly to this Court from an order of the district court granting Petitioner's writ of habeas corpus challenging the loss of good-time credits following a disciplinary hearing. *See* Rule 5–802(H)(1) NMRA 2002 (allowing for an appeal as of right by the State when a writ of habeas corpus is granted); Rule 12–102(A)(3) NMRA 2002 (providing that such appeals shall be taken to this Court). The district court found that Petitioner's due process rights had been violated by the manner in which the Department of Corrections ("the Department") conducted the disciplinary hearing. To remedy the violation, the district court ordered the Department to restore Petitioner's good-time credits and to strike the record of the disciplinary hearing from his file. The court refused to permit the Department to pursue the same issues in another disciplinary hearing. On appeal, the State concedes that Petitioner's due process rights were violated and does not appeal from that portion of the district court's ruling. Rather, the State appeals from the remedy ordered by the district court, argu-

ing that the only proper remedy was for the district court to remand the case to the Department for a new hearing. This appeal provides an opportunity to address issues of first impression arising from the expansion of the availability of the writ since our statutory scheme was adopted. We affirm.

## I.

{2} On February 14, 1999, Corrections Officer Clarence Sena observed Petitioner and fellow inmate Edward Ibuado struggling with a broom through the food port of Ibuado's cell. He also observed Petitioner attempt to throw a portion of the broken broom at Ibuado through the food port. After Petitioner lost control of the broom, he moved away from the cell, and Ibuado threw the broom out of the cell. Officer Sena prepared a misconduct report based on this incident, charging Petitioner with assault or battery with a weapon on another person unless in justifiable defense, and physical fighting with another inmate unless in justifiable defense. Officer Sena took the statements of two other correctional officers who witnessed the event, Officer John Nawara and Sgt. Joey Montoya, and attached those statements to his misconduct report.

{3} Another corrections officer, Sgt. Charles Carlson, conducted a disciplinary investigation. According to his report, he interviewed Petitioner, who gave no statement but listed Gilbert Saavedra as his witness. Sgt. Carlson interviewed Saavedra, who told him that the guards panicked and that nothing had happened. Sgt. Carlson also interviewed Ibuado, who denied the charges. Based on these interviews and his review of the officers' statements submitted to him, Sgt. Carlson recommended that the fighting charge be elevated to a major level offense.

{4} The Department held a disciplinary hearing on February 22, 1999, at which time Petitioner was represented by inmate Samuel Chavez. Petitioner tried to call two inmate witnesses—Saavedra and Ibuado. The hearing officer declined to allow the inmates to testify because he thought that their testimony would be duplicative and cumulative. Based on the written report, the hearing officer concluded that Petitioner was guilty of the major offense of assault or battery, but dismissed the fighting charge. The Warden approved the decision, which was upheld on an internal administrative appeal. The hearing officer recommended 30 days of disciplinary segregation and forfeiture of all of Petitioner's good-time credits. The classification committee, however, forfeited 1 year, 11 months, and 7 days of his good-time credits, leaving him with 30 days of credits on his record.

{5} Petitioner filed a petition for a writ of habeas corpus in the district court on May 6, 1999, alleging, among other things, that he was denied the opportunity to call witnesses in violation of prison policy and his right to due process. The district court appointed the public defender's office to represent Petitioner, and on October 26, 1999, filed an order directing the State to respond to the petition. An evidentiary hearing was scheduled for January 9, 2001.

{6} Petitioner filed his witness list on December 12, 2000. The State, on December 20, 2000, filed a motion in limine to exclude the witnesses. In that motion, and at the subsequent telephonic hearing, the State argued that the fact that Petitioner listed inmate witnesses indicated that he was "attempting to encourage the court to conduct a judicial review of the facts adduced against him during the revocation process." The State argued that the hearing should be limited to determining whether the Department complied with the limited due process rights available to an inmate. The district court agreed that it should not relitigate the facts, but disagreed that the witnesses should be excluded:

> I think I do need to hear what those people would have testified, not for the purpose of substituting my opinion for that of the hearing officer, but to determine whether or not the hearing officer was correct in ruling that these witnesses were not required to appear because their testimony was cumulative. If I find that their testimony was not cumulative, then the officer's decision to not allow the witnesses could be found to be arbitrary and in violation of policy, so I don't ... think that I am required to just take the officer's opin-

ion that it was cumulative and not listen to what they actually would have said.

On that basis, the district court denied the motion.

{7} The evidentiary hearing was held on January 9, 2001. After hearing the testimony of the two inmate witnesses, as well as the investigating officer, the hearing officer, and Petitioner, the district court concluded that the hearing officer had violated Petitioner's due process rights and prison policy by not allowing him to call his witnesses:

> I have a real problem with the hearing officer not allowing the two witnesses to testify. I think that that is a violation of the policies which require that the Department provide a fair disciplinary proceeding based on due process, and the reason I have these serious concerns is that the hearing officer made some conclusions that I think are not supported by what at least is in front of me at this point. We've got no live witnesses testifying at this hearing. That concerns me right off the top because I think a lot of the questions that the hearing officer might have had could have been at least clarified by at least having the three guards testify. The three guards' statements are all different and I have some concerns about that.

{8} The district court indicated that it was inclined to reverse the finding of a major incident, order that the good-time credits be restored, and further order that the major report be stricken from Petitioner's record. The court then gave the parties an opportunity to respond. The State wanted the court to clarify whether it was finding that there was no evidence to support the charge. The court responded:

> No.... If [the investigative report] was all the evidence that was there, that would have been substantial, sufficient to support a finding. But what I'm saying is all he needed to do was call these two additional witnesses and he could have still come down with the same conclusion, but I think sometimes Corrections gets quick and they get sloppy, and they cut corners. I've just seen that too many times, and I am getting concerned about it. Prisoners are almost never allowed to call inmate witnesses ...

under that same category of cumulative, and that concerns me, because I'm seeing too many of those and maybe Corrections needs to know that, at least from my point of view, that's improper.

Toward the close of the hearing the State argued that the proper remedy upon a finding of a due process violation was to remand the matter to the Department for a new disciplinary hearing. The court expressed concern that the matter would come to the court again, and that the guards and witnesses might no longer be available. The court gave the parties five days to brief the issue. Each party filed a written response.

{9} The parties next appeared for a telephonic hearing on April 24, 2001, to resolve the form of the final order. The State had submitted an order that gave the Department the option of holding another disciplinary hearing that would comport with due process. The district court clarified its position:

> I am not allowing them to have another hearing. They had their shot, [and] they denied him a fair hearing. I found that they denied him a fair hearing, [and] they are precluded from having another hearing.... I allowed you all to give me argument as to whether it should be remanded for a new hearing or whether the remedy was just forfeiture, period. And I am convinced under the law that the remedy is forfeiture, not remand, so that part of the order is incorrect.... I'm not allowing them to go back and then allow him to call witnesses, in other words to have another hearing. They had their opportunity to provide him with a fair hearing. I think the writ and the whole historical perspective of these writs is to provide people with relief. To allow them to go back and just then allow witnesses and make the same finding is not what this court is going to allow.

The district court then encouraged the parties to provide it with the order quickly because Petitioner was being prejudiced by the delay.

## II.

{10} Under two separate headings, the State argues first that it was improper to restore the credits and strike the disciplinary proceedings from the record, and second that it was improper to prevent the Department from holding another hearing. The State does not appeal from the finding that Petitioner's due process rights were violated. The narrow issue presented by this appeal is how a trial court, having found that a prison disciplinary hearing and the resultant loss of good-time credits violated a prisoner's due process rights, can remedy that violation. We note as we begin our analysis that the writ itself might be characterized as a remedy. A petition for the writ initiates a proceeding that tests the constitutionality or legality of a confinement or detention. *See* Rule 5–802 (governing habeas corpus proceedings in district court). When the writ is available is a question that has been addressed and answered in various ways in different cases over many years. The answers to that question reflect a deepened understanding of the function of the writ and a correspondingly wider use of it. That question is not before us in this case. The State does not dispute the availability of the writ to Petitioner; no one questions the fact that the allegations in his petition justified the district court's decision to hold an evidentiary hearing rather than to deny the petition summarily. *See* Rule 5–802(E) (detailing the procedures a district court is to follow upon receipt of a petition for habeas corpus). The consensus in this case on the availability of the writ on these facts reflects its expanded use in state and federal courts.

{11} The pressures that have deepened our understanding of the function of the writ and caused courts to recognize its availability in more situations, including the allegations in Petitioner's complaint, however, do not direct us to a clear answer to both arguments made by the State, which concern the range of dispositions available following the evidentiary hearing. The evolution of the writ in state and federal courts, assisted in part by statutory provisions and the relevant standard of review, however, support a conclusion that the disposition ordered by the district court should be affirmed. For the reasons that follow, we hold that on this record Petitioner was entitled to an order restoring the credits and removing the disciplinary report from his record. We also hold that the district court did not abuse its discretion in preventing the Department from holding another hearing. We therefore affirm.

### A.

{12} We have previously recognized that a petition for a writ of habeas corpus is the proper avenue to challenge the unconstitutional deprivation of good-time credits, even if it would not result in an immediate release. *Brooks v. Shanks,* 118 N.M. 716, 885 P.2d 637 (1994); *see also Martinez v. State,* 110 N.M. 357, 796 P.2d 250 (Ct.App.1990). This particular use of the writ represents an expansion, as the writ was traditionally used to secure the release of a person unconstitutionally or otherwise unlawfully held. *See generally* Thomas A. Donnelly & William T. MacPherson, *Habeas Corpus in New Mexico,* 11 N.M. L.Rev. 291, 292–99 (1981) (describing the traditional and modern uses of the writ). Perhaps for this reason, neither party has alerted us to any New Mexico case discussing how to craft a remedy when, as apparently was true in this case, even a successful petition would not result in an immediate release from custody following the court's order granting the petition. We must, therefore, rely on more general principles, including the insights provided by the historical development of the writ, as well as contemporary examples of the use of the writ, in addressing the issues of first impression presented by this appeal.

{13} Historically, the writ of habeas corpus was available to challenge the trial court's jurisdiction regarding the underlying conviction. *See, e.g., Smith v. Abram,* 58 N.M. 404, 407, 271 P.2d 1010, 1012 (1954) ("Proceedings on writ of habeas corpus ... lie ... only when the judgment attacked is absolutely void for the reason that the court rendering it was without jurisdiction to do so."). It has been said that "[i]n the early decades of our new federal system, English common law defined the substantive scope of the writ." *McCleskey v. Zant,* 499 U.S. 467,

478, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (citation omitted).

The common law limitations on the scope of the writ were subject to various expansive forces, both statutory and judicial. *See generally* [Paul M.] Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners,* 76 Harv. L.Rev. 441, 463–99 (1963). The major statutory expansion of the writ occurred in 1867, when Congress extended federal habeas corpus to prisoners held in state custody. Act of Feb. 5, 1867, ch. 28, § 1, 14 Stat. 385. For the most part, however, expansion of the writ has come through judicial decisionmaking.

*Id.* In *Peyton v. Rowe,* 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), for example, the Court held that a prisoner serving consecutive sentences might challenge the legality of a sentence scheduled for future service, thereby overruling precedent to the contrary. The Court noted that the prior decision "was compelled neither by statute nor history and ... represents an indefensible barrier to prompt adjudication of constitutional claims in the federal courts." *Id.* at 55, 88 S.Ct. 1549. The Court further stated that " '[t]he writ is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty.' " *Id.* at 66, 88 S.Ct. 1549 (quoting *Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)).

{14} The United States Supreme Court initially expanded the scope of the writ in federal courts by "entertain[ing] the fiction that constitutional violations in a criminal case deprive the trial court of *jurisdiction.*" Larry W. Yackle, *Postconviction Remedies* § 5, at 15 (1981) (citing *Johnson v. Zerbst,* 304 U.S. 458, 467–68, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). Many states, including New Mexico, followed the example of the Supreme Court in developing the scope of the writ in state courts. *See generally State v. Trevino,* 113 N.M. 804, 812, 833 P.2d 1170, 1178 (Ct. App.1991) (discussing the expansion of the term jurisdiction "to include any problems in the proceedings that would warrant habeas relief"). Subsequently, the Supreme Court "openly discarded the concept of jurisdiction—by then more a fiction than anything else...." *McCleskey v. Zant,* 499 U.S. at 478, 111 S.Ct. 1454 (quoting *Wainwright v. Sykes,* 433 U.S. 72, 79, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). The Court described the writ as extending "to all dispositive constitutional claims presented in a proper procedural manner." *Id.* at 479, 111 S.Ct. 1454. We continued to follow the precedent even after the United States Supreme Court had abandoned it. *Trevino,* 113 N.M. at 812, 833 P.2d at 1178.

{15} The expansion of the scope of the writ in federal courts was matched by state courts as a means of ensuring that "the emergence of federal habeas corpus [would not be] a significant threat to the independence of state criminal prosecutions." Yackle, *supra,* § 5, at 16. It has been suggested that restrictions on the availability of habeas relief in state courts "frustrated the development of the common law writ as a meaningful alternative to federal review." *Id.* at 17. Some states have turned to legislation that provided for relief in the court where the conviction occurred; others have turned to legislation providing for relief near the place of confinement. *Id.* We have a statutory scheme, *see* NMSA 1978, §§ 44–1–1 to 44–1–38 (1884, as amended through 1963), and we have provided procedures by rules, *see* Rules 5–802 and 12–502 NMRA 2002. Neither our statutory scheme nor our procedural rules provide clear answers to the questions presented to the district court or to this Court on appeal. As a result, we believe cases from other jurisdictions provide useful guidance.

**B.**

{16} Federal law indicates that a petitioner for a writ of habeas corpus seeks an equitable remedy. *See, e.g., Gomez v. United States Dist. Court,* 503 U.S. 653, 653–54, 112 S.Ct. 1652, 118 L.Ed.2d 293 (1992) (per curiam). In recognition of this idea, a court has some flexibility in fashioning an appropriate disposition for the circumstances of a particular case. *See* 28 U.S.C. § 2243 (2000) (authorizing the district courts to "dispose of the matter as law and justice require");

NMSA 1978, § 44–1–25 (1884) (authorizing the court to "dispose of such party as justice requires"). This flexibility is itself an expansion of common law principles, because traditionally a release from custody was the only appropriate remedy. *See* Yackle, *supra*, § 140. As a result of the broadened uses of the writ, multiple remedies are sometimes necessary. *Id.* §§ 144–146. The traditional remedy of immediate release will not always be appropriate. *See* Donnelly & MacPherson, *supra*, at 314 ("Release from custody, release from custody pending retrial, vacating of a sentence as unconstitutional, transfer from one institution to another, or change in the nature of conditions of custody are all appropriate requests.").

{17} The principle that the petitioner seeks an equitable remedy, however, has limits. A court may not ignore statutes, rules, and precedents when fashioning such a remedy. *Lonchar v. Thomas*, 517 U.S. 314, 323, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996). "[T]he alternative is to use each equity chancellor's conscience as a measure of equity, which alternative would be as arbitrary and uncertain as measuring distance by the length of each chancellor's foot." *Id.* (citing 1 Joseph Story, LL. D., *Commentaries on Equity Jurisprudence* 16 (13th ed. 1886)). The discretion traditionally associated with the exercise of equitable jurisdiction must be exercised within limits that permit effective appellate review. Otherwise, the rights intended to be protected by the writ could be as easily denied as protected. *Cf. Lonchar*, 517 U.S. at 322, 116 S.Ct. 1293 (rejecting a district court's authority to deny the writ in a death penalty case for "special, ad hoc 'equitable' reasons"). The most appropriate disposition will usually be a conditional order which will require the prison either to release the prisoner from a given type of sentence, or to retry the prisoner in a constitutional manner within a reasonable or otherwise specified period of time. *See* 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 33.3 (4th ed.2001). Other procedural protections, such as ordering a different hearing examiner to preside over the subsequent hearing, may also be ordered to ensure impartiality. *See Nelson v. Comm'r of Corr.*, 390 Mass. 379,

456 N.E.2d 1100, 1111 n. 23 (1983). We conclude that an absolute bar to further proceedings is an exceptional remedy.

{18} For example, in *Capps v. Sullivan*, 13 F.3d 350 (10th Cir.1993), the Tenth Circuit Court of Appeals considered whether a district court may exercise its discretion in a habeas petition to bar a new trial. The court held that precluding a new trial is a permissible remedy, but only when "the error forming the basis for the relief cannot be corrected in further proceedings." *Id.* at 352. The court further found that to order such a remedy, "the constitutional violation must be such that it *cannot be remedied by another trial,* or other *exceptional circumstances exist* such that the holding of a new trial would be unjust." *Id.* at 352–53 (emphasis added).

{19} In *James L. v. Commissioner of Correction*, 245 Conn. 132, 712 A.2d 947 (1998), the Supreme Court of Connecticut interpreted a habeas corpus statute similar to our own. There, the Commissioner challenged the district court's authority to restore a prisoner's right to a sentence review hearing, after the prisoner had been denied the effective assistance of counsel by missing the deadline to request such a hearing. The Supreme Court decided that the district court was correct to order a new hearing, despite the passing of the deadline. It interpreted the phrase of the statute that allows courts to dispose of cases "as law and justice require" to mean that "[a] habeas court must fashion a remedy appropriate to the constitutional right it seeks to vindicate." *Id.* at 955. As such, the appropriate remedy was to put the prisoner in the position he would have been had the constitutional violation never occurred by allowing a new sentence review hearing. The court found that this would be the "[o]nly ... appropriate remedy for the petitioner in the circumstances of this case." *Id.*

{20} The Court of Appeals, in an analogous context, has recently recognized the general principle that remedies for constitutional violations should be narrowly tailored. In *In re Jade G.*, 2001–NMCA–058, 130 N.M. 687, 30 P.3d 376, *cert. granted,* 130 N.M. 713, 30 P.3d 1147 (2002), *cert. quashed,* 132 N.M.

484, 51 P.3d 527 (2002), the Court of Appeals reversed the trial court when it dismissed a murder case because of police misconduct prior to the judicial proceedings. The Court concluded that neither the children's code, the doctrines of entrapment or outrageous government conduct, nor the court's inherent authority justified dismissing the case. *Id.* ¶¶ 20, 25, 29, 30 P.3d 376. In so doing, the Court noted that it has "looked with favor upon the United States Supreme Court rule that remedies for constitutional violations should be tailored to the injury suffered." *Id.* ¶ 29, 30 P.3d 376.

{21} That United States Supreme Court rule comes from *United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). In that case, the Court reversed the Court of Appeals for the Third Circuit, which had held that the conduct of law enforcement in interviewing the defendant without the knowledge or consent of her retained counsel amounted to a violation of the Sixth Amendment, and that the violation warranted dismissal of the indictment with prejudice. *Id.* at 363–64, 101 S.Ct. 665. The Court held that "[c]ases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *Id.* at 364, 101 S.Ct. 665. Thus, the Court noted that even in cases involving Fourth and Fifth Amendment violations, "[t]he remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression." *Id.* at 366, 101 S.Ct. 665. While we recognize the fact that this case is distinguishable from *Jade G.* and *Morrison,* in that it comes to us in the context of a writ of habeas corpus, we nevertheless think that this general principle should apply and that remedies for constitutional violations should be narrowly tailored and take into account competing interests.

### III

{22} A competing interest in this case is the fact that, as a general matter, prison discipline is entrusted to prison administrators. *Apodaca v. Rodriguez,* 84 N.M. 338, 340, 503 P.2d 318, 320 (1972). NMSA 1978,

§ 44–1–2 (1884) provides that "persons committed or detained by virtue of the final judgment, conviction or decree of any competent tribunal" are not "entitled to prosecute" the writ of habeas corpus. However, our cases explain that when certain constitutional guarantees are denied, overlooked or omitted, then the tribunal which entered the original judgment was not "competent," and habeas corpus is then the proper method of review. *See Orosco v. Cox,* 75 N.M. 431, 435, 405 P.2d 668, 671 (1965). The term "tribunal" is not limited in the statute to refer only to courts within the judicial branch, and the term is often used in other contexts to refer to administrative proceedings. *See, e.g., In re Held Orders of U.S. West Communications, Inc.,* 1999–NMSC–024, ¶ 13, 127 N.M. 375, 981 P.2d 789 ("With respect to both courts and administrative tribunals, the general rule is that a case is no longer considered to be pending after a final judgment is filed."). Disciplinary hearings within the Corrections Department, such as this one, qualify as tribunals and fall within the habeas corpus statute as well.

### A.

{23} This was a necessary assumption in *Brooks v. Shanks,* 118 N.M. 716, 885 P.2d 637 (1994), where we allowed a habeas petition to stand that challenged the Department's procedures in denying good-time credits to a prisoner. The Due Process Clause and our recognition in *Brooks* of a liberty interest in good-time credits allows for judicial oversight of the prison procedures. Nevertheless, we think it prudent to maintain narrow oversight that is in keeping with the limited due process guarantees recognized by the United States Supreme Court in *Sandin v. Conner,* 515 U.S. 472, 482–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (declining to find a protected liberty interest in confinement in the general population rather than disciplinary segregation), *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (holding that due process only requires that there be "some evidence" supporting a prison disciplinary board's decision revoking good-time credits), and *Wolff v. McDonnell,* 418 U.S. 539, 563–

67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (describing the limited procedural protections required by due process in prison disciplinary hearings). In this setting, the fiction that the court or tribunal that conducted proceedings tainted by procedural error has no jurisdiction or was not a competent tribunal serves the purpose of reconciling the statute and the cases.[1]

{24} The State's brief contains many examples of courts from other jurisdictions that have remedied a due process violation in a prison disciplinary hearing by remanding the case for a new hearing. For example, in *Nelson v. Commissioner of Correction*, 390 Mass. 379, 456 N.E.2d 1100 (1983), the Supreme Judicial Court of Massachusetts found due process violations in the way the petitioners' disciplinary hearing was conducted. The Court concluded:

> We note, also, that, while the order of the judge that the good-time credits of these plaintiffs be restored is appropriate on this record, it should not be a bar to the Commissioner in ordering a new disciplinary hearing, pursuant to revised regulations in accordance with the requirements of this opinion. Put otherwise, the plaintiffs are entitled, at most, by analogy, to a "new trial," free of error. Hence, on remand, the judge should order, if requested, a new hearing by a disciplinary board.

456 N.E.2d at 1111 (footnote omitted).

## B.

■ {25} Applied to the facts of this appeal, these principles lead us to conclude that the district court did not err in ordering the good-time credits reinstated. Restoring the good-time credits taken in an unconstitutional manner and striking the record of the deficient hearing was a remedy tailored to the harm caused by the hearing conducted contrary to Department policy. In fact, we believe it would have been error not to order the credits restored immediately.

{26} Prior to the unconstitutional deprivation, Petitioner had good-time credits, but was facing a disciplinary hearing at which time he could lose them. Restoring him to that precise position seems consistent with the scope of the writ as it has evolved to date. The Supreme Court has recognized, however, that an accused in a criminal case has greater due process rights than a prisoner in a disciplinary hearing. *See Wolff*, 418 U.S. at 555–56, 94 S.Ct. 2963. We agree with the State that it would be unusual to prevent a rehearing in the case of a prison disciplinary hearing, when the typical remedy in a criminal proceeding in which an error occurred is a new trial.

■ {27} We note, however, that if, as a result of restoring the credits, Petitioner would have been eligible for release, we think the district court's order precluding a new hearing would have been required. In that case, permitting another hearing would seem to extend Petitioner's commitment for the sole purpose of permitting the Department to correct its original mistake and to conflict with his right to be restored to the position he would have enjoyed but for that mistake. Similarly, if the district court were convinced that the Department would not or could not provide Petitioner with a fair hearing, we think the district court's order precluding a new hearing would have been required. In that case, permitting another hearing would serve no purpose. In this case, we believe the question of whether the Department should have been told it could not hold another hearing was within the court's discretion to fashion an appropriate remedy.

## C.

{28} Some of the district court's comments, quoted above, indicate that it felt that the Department's procedures were often

---

1. The necessity to resort to fictions such as this demonstrates that it may be time for our legislature to revise our habeas corpus statutes, which are now over 100 years old, in light of judicial developments. *See generally* III Roscoe Pound, *Jurisprudence* § 107, at 465 (1959) ("[Legal fictions] are a clumsy device appropriate only to periods of growth in a partially developed political organization of society in which legislation on any large scale is not possible. They are not suited to later times and developed systems. In a period of growth, when ideas are few and crude, they enable a body of law to be molded gradually, without legislative action, to meet immediate wants as they arise and to conform to the requirements of cases as they arise.").

sloppy and too frequently denied the prisoners a right to call inmate witnesses. The district court may have concluded that the Department should be prevented from holding a second hearing in order to provide significant consequences for a departure from Department policies that protect prisoners' constitutional rights. *See, e.g., Green v. Nelson,* 442 F.Supp. 1047, 1059–60 (D.Conn.1977) (holding that repeated, knowing, and gross disregard for the constitutional rights of prisoners required firm measures to deter such action); *but cf. Jade G.,* 2001–NMCA–058, ¶¶ 24–25, 130 N.M. 687, 30 P.3d 376 (disagreeing that outrageous police conduct short of entrapment could justify dismissal, but deciding that, even if it could, it would not under the facts of that case).

**{29}** The district court's written order, however, made no reference to a prohibition against or preclusion of a further hearing, although the court's intentions seem clear in oral remarks from the bench. Perhaps as a consequence of the absence of any reference to a further hearing, the district court made no findings and conclusions [2] concerning the matters to which the judge alluded in his oral remarks. Such findings can be helpful in determining whether exceptional circumstances justify an exceptional remedy. Further, such findings can be helpful in facilitating our ability to provide for future cases in other judicial districts where similar petitions might be filed.

{30} In view of the fact that the State's written motion requested the court to remand the matter for a new hearing before restoring the credits, and because we believe Petitioner was entitled to an immediate restoration of the credits, perhaps the district court saw no need to make findings that would have distinguished the remedial relief of restoring the credits that had been forfeited without due process from the sanction of denying the Department the opportunity to hold a new hearing. We note that no findings were requested, and that the Department has not argued on appeal either that findings were necessary, or that further evidence is necessary for us to decide the issues raised on appeal.

**{31}** In the absence of findings, we look to the district court's remarks. *Ledbetter v. Webb,* 103 N.M. 597, 603–04, 711 P.2d 874, 880–81 (1985). Further, we construe those remarks to uphold the order. *Herrera v. Roman Catholic Church,* 112 N.M. 717, 721, 819 P.2d 264, 268 (Ct.App.1991). We may give those remarks "a liberal interpretation if the interpretation is supported by the evidence." *Id.*

{32} We interpret the court's remarks as finding that the Department has, in other cases, engaged in similar conduct. We recognize that there is no evidence in this record about those cases or the facts and law involved in them. We interpret the court's remarks, however, as referring to cases of record in the First Judicial District. We see no reason not to permit the court to take judicial notice of its own records. *Cf. State v. Turner,* 81 N.M. 571, 576, 469 P.2d 720, 725 (Ct.App.1970) (recognizing the Court of Appeals' authority to take judicial notice of its own records). The State never disputed the court's statement at trial or on appeal. For purposes of this appeal, we are willing to treat the court's remarks as stating a fact or facts not in dispute, and that the only dispute we ought to resolve is the legal effect of the court's remarks.

**{33}** As we have noted, precluding a new hearing is an exceptional remedy, which we believe is only appropriate when the trial court is persuaded either that the Department will not or cannot provide a fair hearing on remand, or that there has been such a pattern of conduct by the Department that a sanction is appropriate. In this case, we believe the court's remarks support a conclusion that the court had concluded a sanction was appropriate as an exceptional remedy for exceptional circumstances. We are not persuaded that the conclusion was against the logic of the law as applied to the facts. *See Sims v. Sims,* 1996–NMSC–078, ¶ 65, 122 N.M. 618, 930 P.2d 153 (1996) ("An abuse of

---

2. Habeas corpus proceedings are civil in nature; it is thus entirely appropriate for the district court to make findings of fact and conclusions of law under Rule 1–052 NMRA 2002. *See, e.g., Smith v. Maldonado,* 103 N.M. 570, 572, 711 P.2d 15, 17 (1985).

discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case.") (citations omitted); *accord Miller v. City of Albuquerque,* 88 N.M. 324, 331, 540 P.2d 254, 261 (Ct.App.1975) (defining abuse of discretion as being "unfair, arbitrary, manifest error, or not justified by reason") (citing *State v. Hargrove,* 81 N.M. 145, 147, 464 P.2d 564, 566 (Ct.App.1970)). Thus, we believe the court acted within its discretion to fashion an appropriate remedy.

{34} We also believe the court's remarks support a conclusion that it saw the remedy of a new hearing as inextricably linked in the Department's arguments with the question of whether the credits should be immediately restored, or whether restoration of the credits should be contingent on the outcome of another hearing. In other words, in its "Motion in Support of a Remand For a New Hearing," the State argued that the court should both grant a new hearing, and refrain from reinstating Petitioner's credits. The court chose not to grant this motion. This left the court with the logical alternative of reinstating the credits, which had been Petitioner's requested relief. At the hearing on the form of the order, the State asked the court to include in the order language that authorized the Department to hold another hearing after it had restored the credits and struck the record of the prior hearing. At this point in the proceedings, however, the court might have perceived the State's request as a third alternative. We think the court did not abuse its discretion in rejecting Petitioner's request to include language permitting another hearing. On appeal, the State has made clear its position that the court erred in two ways: restoring the credits and denying another hearing. We believe this position was far less clear at trial. Under these circumstances, the court's order is both more explicable and even more clearly within its discretion.

### IV.

{35} We affirm the district court in ordering that Petitioner's good-time credits be restored and the record of the hearing be stricken from his file. Petitioner was enti-

tled to that relief on proof his credits had been forfeited following a hearing at which his rights to due process had been denied. We also affirm the court's decision to preclude another hearing for the incident at issue. We are not persuaded the district court abused its discretion in reaching that decision. The district court's order is therefore affirmed.

{36} IT IS SO ORDERED.

WE CONCUR: PATRICIO M. SERNA, Chief Justice, GENE E. FRANCHINI, PETRA JIMENEZ MAES, and PAUL J. KENNEDY, Justices.