IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:   2012-NMSC-040

Filing Date: November 8, 2012

Docket No. 32,938

JOSEPH C. PERRY,

        Plaintiff-Appellee,

v.

STANLEY MOYA, Warden,

        Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Sheri A. Raphaelson, District Judge

Gary K. King, Attorney General
Mark Joseph Lovato, Assistant Attorney General
Santa Fe, NM

for Appellant

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellee

## OPINION

**BOSSON, Justice.**

**{1}**     This case comes to this Court on direct appeal from an order issued by the First Judicial District Court granting a writ of habeas corpus.  For reasons that follow, we reverse the district court, dismiss the petition for a writ of habeas corpus, and reinstate the sanctions imposed by the New Mexico Corrections Department (NMCD).

**BACKGROUND**

1

**{2}** Joseph C. Perry, Petitioner, is a prison inmate at the Penitentiary of New Mexico. During the central events of this petition, he was serving a sentence at the Lea County Correctional Facility for battery against a household member as well as for a parole violation for fraud over $2,500. On September 2, 2006, Petitioner was transported to the Otero County Detention Center for an arraignment relating to the fraud charge.

**{3}** While at the Otero County Detention Center, Petitioner raped inmate Joshua Sommer. Upon discovering Petitioner's pending criminal charge for rape in the Twelfth Judicial District Court in Otero County, NMCD pursued disciplinary action against him for the same rape incident. A disciplinary hearing was scheduled for December 4, 2006, at the Lea County Correctional Facility.

**{4}** According to Petitioner, at some point prior to the disciplinary hearing, Hearing Officer Sandra Miller visited him to inform him of his legal rights pertaining to the hearing. In a handwritten "Declaration/Statement" submitted to the district court, Petitioner claimed he told Hearing Officer Miller that he wanted to call two inmate witnesses from the Otero County Detention Center to testify on his behalf. Petitioner stated that Hearing Officer Miller told him he could only call "readily available" witnesses and denied his request because it was not practical to transport the two inmates from one detention center to another. According to NMCD regulations discussed during the evidentiary hearing, if a witness is not readily available, inmates may submit written questions to the hearing officer, which the hearing officer may then provide to the witness for a written response. Petitioner claims that he was never told about this procedure for written questions nor did he have any knowledge of it.

**{5}** On the scheduled date, Hearing Officer Miller conducted an inmate disciplinary hearing. She documented the proceedings and the evidence in a form entitled "Disciplinary Summary of Evidence and Proceeding." The tape of this hearing cannot be located. On the summary form, Hearing Officer Miller noted that "Inmate Perry was advised of his right to call a readily available witness. He called no one. He Declined." Based on the incident and investigation reports, written statements from prison officials, photographs, and the victim's medical examination report, Hearing Officer Miller determined that Petitioner had committed the offenses of rape and threats to other inmates. As a result of these findings, NMCD forfeited Petitioner's earned good time (69 days) and placed him in Level VI Disciplinary Segregation at a maximum security facility for a period of 455 days.

**{6}** On August 1, 2007, Petitioner filed a pro se petition for a writ of habeas corpus in the First Judicial District Court in Santa Fe County asserting five grounds for habeas relief. Just over three weeks later, on August 23, 2007, Petitioner was convicted in the Twelfth Judicial District Court in Otero County of the second-degree felony of criminal sexual penetration and the third-degree felony of bribery or intimidation of a witness, based on the same rape incident. Approximately a year later, the State filed an amended response to an amended petition for a writ of habeas corpus and attached the judgment and sentence from Petitioner's Twelfth Judicial District rape conviction as an exhibit.

**{7}** Due to various issues not related to this opinion, Petitioner's case lingered in the district court. On December 11, 2009, the First Judicial District Court in Santa Fe County (Petitioner by that time was serving his prison sentence at the Penitentiary of New Mexico in Santa Fe County) conducted an evidentiary hearing on the habeas petition. The central issue at the evidentiary hearing was whether NMCD had violated Petitioner's due process rights by denying him an opportunity to call witnesses or otherwise elicit written testimony at his prison disciplinary hearing. At the conclusion of the habeas hearing, the district court agreed with Petitioner's contentions. The district court found, among other things, that NMCD had failed to inform Petitioner of its procedure for submitting written questions to unavailable witnesses and failed to provide him with a written denial of his request to present witnesses at the disciplinary hearing.

**{8}** On April 23, 2010, the district court issued an order granting remedies with respect to its earlier findings of due process violations. Notwithstanding Petitioner's intervening criminal convictions for rape and witness intimidation, the district court ordered NMCD to (1) restore Petitioner's good-time credits, (2) remove the disciplinary hearing findings from Petitioner's record, (3) never use findings of the disciplinary hearing against Petitioner in any way, including in present and future decisions relating to classification and placement within the prison system, and (4) never pursue the same factual allegations that were the subject of the disciplinary hearing in later proceedings against Petitioner.

**{9}** The State filed a direct appeal with this Court pursuant to Rule 12-102(A)(3) NMRA ("The following appeals shall be taken to the Supreme Court . . . appeals from the granting of writs of habeas corpus . . . ") and Rule 5-802(H)(1) NMRA ("[I]f the writ [of habeas corpus] is granted, the state may appeal as of right pursuant to the Rules of Appellate Procedure.").

**DISCUSSION**

**{10}** On appeal, the parties debate whether Petitioner was aware of the procedure for submitting written questions to witnesses who could not testify in person. At the evidentiary hearing, Petitioner testified that he had no knowledge of that option, testimony the district court credited in its finding that "[t]he Petitioner was not informed that there was any alternate method for presenting the testimony of the witnesses, such as submitting written questions for the witnesses to answer . . . ." Additionally, the court found that Petitioner believed his witnesses would have testified that they did not hear or see him rape another inmate.

**{11}** For reasons that follow, we need not examine this factual question on our own. We assume arguendo that the district court's findings are correct and that Petitioner was not fully informed of his legal options to question witnesses. We further assume that this omission by NMCD deprived Petitioner of due process in terms of Petitioner's ability to defend himself at the prison disciplinary hearing. In our view, however, the pivotal question is not one of due process, but whether the *remedy* the district court fashioned was appropriate

3

under the circumstances of this case. We review the district court's choice of remedy for an abuse of discretion. *See Lopez v. LeMaster*, 2003-NMSC-003, ¶¶ 10-11, 35, 133 N.M. 59, 61 P.3d 185 (reviewing district court's decision issuing a remedy in a habeas corpus case for abuse of discretion).

**{12}** We recognized in *Lopez* "that the writ [of habeas corpus] itself might be characterized as a remedy." *Id.* ¶ 10. Nevertheless, the use of the writ of habeas corpus has evolved over the years in state and federal courts. *See id.* ¶¶ 10-11 (tracing the history of the writ of habeas corpus in New Mexico). Traditionally, a detainee used the writ of habeas corpus to secure immediate release from unlawful or unconstitutional detainment. *Id.* ¶ 12. The writ is also, however, "the proper avenue to challenge the unconstitutional deprivation of good-time credits, even if it would not result in an immediate release." *Id.*

**{13}** In *Lopez*, a habeas corpus case similar to Petitioner's, this Court considered the proper remedy after the district court determined that NMCD had violated an inmate's due process rights in the course of disciplinary proceedings. *Id.* ¶¶ 4-5, 10. In that case, an inmate, who allegedly threw a broom at another inmate, attempted to call two inmate witnesses at his prison disciplinary hearing. *Id.* ¶¶ 2-4. The hearing officer denied the request, stating that the testimony would be "duplicative and cumulative." *Id.* ¶ 4. The hearing officer found the inmate guilty, recommending that the inmate spend thirty days in disciplinary segregation and lose all good-time credits. *Id.* In the end, the inmate was compelled to forfeit all but thirty days of his nearly two years of accrued good-time credits. *Id.* The inmate filed a petition for a writ of habeas corpus, alleging that he was denied the opportunity to call witnesses in violation of his right to due process of law. *Id.* ¶ 5.

**{14}** The court granted the writ. *Id.* ¶ 1. As for the remedy, the district court ordered NMCD to restore the inmate's good-time credits, strike the record of the disciplinary hearing from the inmate's file, and never pursue the same issues in a later disciplinary hearing. *Id.* ¶ 1. We affirmed. *Id.* ¶ 35.

**{15}** The *Lopez* Court discussed the appropriate remedies available to a habeas court. *Id.* ¶¶ 12-21. In affirming, we stated that traditionally the writ provided for an equitable remedy, such that "a court has some flexibility in fashioning an appropriate disposition for the circumstances of a particular case." *Id.* ¶ 16; *see also* NMSA 1978 § 44-1-25 (1884) (stating that in habeas corpus cases, the court can "dispose of such [petitioning] party as justice requires"). The remedies available, however, are not limitless. *Id.* ¶¶ 16-17. Specifically, we stated that "[t]he discretion traditionally associated with the exercise of equitable jurisdiction must be exercised within limits that permit effective appellate review. Otherwise, the rights intended to be protected by the writ could be as easily denied as protected." *Id.* ¶ 17.

**{16}** Typically, the appropriate remedy will be either releasing the inmate from the imposed discipline or ordering a new hearing but not barring future discipline. In *Lopez* we emphasized that "an absolute bar to further proceedings is an *exceptional* remedy." *Id.*

4

(emphasis added). We went on to say that in cases involving the deprivation of constitutional rights, the remedies available should be narrowly tailored to the injury suffered "and take into account competing interests" such as the disciplinary needs of the prison system. *Id.* ¶¶ 21-22. Overall, we stated that

> precluding a new hearing is an exceptional remedy, which we believe is only appropriate when the trial court is persuaded either that [NMCD] will not or cannot provide a fair hearing on remand, or that there has been such a pattern of conduct by [NMCD] that a sanction is appropriate.

*Id.* ¶ 33.

**{17}** In reaching our conclusion in *Lopez*, we reasoned that the district court did not abuse its discretion in ordering the discipline expunged without a new hearing because the court had described on the record its concerns about the number of times NMCD had denied inmates the right to call witnesses at prison disciplinary hearings. *Id.* ¶ 7-9, 28. Specifically, the district court explained that it had seen NMCD "get sloppy" and "cut corners . . . too many times" when it came to allowing prisoners to call witnesses. *Id.* ¶ 8. (internal quotation marks omitted)

**{18}** On review, we found that the court did not abuse its discretion in issuing an exceptional remedy because the court had essentially taken judicial notice of a pattern of misconduct by NMCD for which the court fashioned a specific and narrow remedy, both to protect the petitioner and to address systemic problems in the NMCD disciplinary process. *Id.* ¶¶ 20-22, 33. We stated "that the district court had concluded a sanction was appropriate as an exceptional remedy for exceptional circumstances." *Id.* ¶ 33.

**{19}** *Lopez* forms the backdrop for our consideration of Petitioner's habeas case. Whereas in *Lopez* the district court found exceptional circumstances that justified bypassing any further prison hearing on remand, here the district court made no findings charging NMCD with a pattern of misconduct. Here, unlike in *Lopez*, no evidence in the record suggested, nor did the judge find, that NMCD consistently or frequently denied inmates the opportunity to call witnesses at their disciplinary hearings or failed to inform them of the procedure for submitting written questions to witnesses. Rather, at least based upon this record, Petitioner's problem with posing questions to witnesses appears to be an isolated incident that, at least in the abstract, could be rectified at a fair hearing on remand.

**{20}** The district court did, however, point out one salient problem with remand in this particular case that bears mention. Specifically, in its order granting the remedy the district court stated that

> [d]ue to the length of time that has elapsed and the nature of the due process violations, [NMCD] would be unable to provide a fair hearing for Petitioner. The lapse of time has already resulted in the unavailability of witnesses, as

evidenced, for example, by the unavailability of [NMCD's] witness at the evidentiary hearing in this matter, and would certainly impact memories of witnesses that could be located.

Presumably, the fact that one of Petitioner's potential witnesses had since been deported also factored into this decision.

**{21}** The court's concerns are legitimate, and in the ordinary case—where discipline is imposed without the benefit of a parallel criminal conviction—those concerns might justify the extraordinary relief of "precluding a new hearing." But that is not what happened in this case.

**{22}** In Petitioner's case, the purpose of a new hearing on remand would be to determine whether Petitioner committed the rape and thus violated prison rules. Ordinarily, determining a violation of prison rules would require disciplinary hearing. But in this case, Petitioner was already tried and convicted of the rape in district court. *See State v. Roybal*, 33 N.M. 540, 547-48, 273 P. 919, 922 (1928) ("The term conviction . . . [i]n its most common use . . . signifies the finding of the jury that the prisoner is guilty. . . . [T]he word conviction in the broader and less technical sense . . . implies the judgment of the court.") (internal quotation marks and citation omitted); *Black's Law Dictionary* 384 (9th ed. 2009) (defining conviction as "[t]he act or process of judicially finding someone guilty of a crime"). A jury found Petitioner guilty of rape in a criminal trial where the burden of proof was beyond a reasonable doubt, which is greater than the burden of proof in a prison disciplinary hearing. *See* New Mexico Corrections Department Policies, Inmate Discipline CD-090101 (A)(10) at http://corrections.state.nm.us/policies/docs/CD-090100.pdf (last visited Nov. 1, 2012). ("Disciplinary hearings are administrative hearings and findings will be determined by preponderance of the evidence.").

**{23}** We know of no case holding that an inmate is entitled to a new disciplinary hearing when his guilt has already been established at criminal trial, nor would such a holding make sense. A new disciplinary hearing would be unnecessary as a matter of law or, at most, might be required perfunctorily to receive into evidence the prior judgment and sentence. *See Otherson v. Dep't of Justice*, 711 F.2d 267, 271, 278 (D.C. Cir. 1983) (upholding the use of the doctrine of issue preclusion to find that petitioner's prior criminal conviction could be given preclusive effect in a later administrative proceeding and noting that the administrative body only needs to find guilt by a preponderance of the evidence); *S.C. State Bd. of Dental Exam'rs v. Breeland*, 38 S.E.2d 644, 648 (S.C. 1946) (recognizing that a criminal conviction could be used in a later dental license revocation hearing, noting "[t]he question of his guilt here is precisely the same as was determined adversely to him under circumstances most favorable to himself—that is, in a prosecution in which he could not have been convicted unless his guilt had been shown beyond a reasonable doubt."); *see also Weiss v. N.M. Bd. of Dentistry*, 110 N.M. 574, 579, 798 P.2d 175, 180 (1990) (holding that a prior criminal conviction was itself sufficient to support the Board of Dentistry revoking a dental license in a subsequent license revocation hearing); *cf.* New Mexico Corrections

Department Policies, *supra*, CD-090101(A)(7) ("Any act, although not specifically listed in this policy, that would be either a felony or misdemeanor under the Criminal Code of the State of New Mexico or the Laws of the United States of America will constitute a misconduct violation under criteria established by this policy.").

{24}    In focusing on Petitioner's procedural due process rights, the district court appears to have lost sight of the reason for such a hearing. The court failed to appreciate the significance of the intervening criminal convictions—not to whether due process was violated—but, pivotally, to what remedy was appropriate under the circumstances. If this were a case for declaratory and injunctive relief, for example, the court could declare the due process violation and enjoin NMCD from engaging in similar conduct in the future. If this were a case for damages, the court could consider compensation for past wrongs. In a habeas case, however, the court is limited to habeas relief directed at the discipline imposed—discipline that has been vindicated by the intervening criminal convictions. In failing to recognize the limits of habeas relief—the sole question before it—the district court clearly abused its discretion.

{25}    In doing so, the court ignored pleas of counsel to the contrary. Throughout the proceedings, the court was made aware of Petitioner's intervening criminal convictions. At the beginning of the evidentiary hearing, the State alerted the court to the importance of Petitioner's criminal convictions. Specifically, when the State mentioned that a jury had already convicted Petitioner for the "same act" beyond a reasonable doubt, the court responded that there is different evidence presented at a criminal trial. The court further stated that it was not there to determine whether Petitioner committed the rape, but rather to determine if NMCD had violated his due process rights at the prison disciplinary hearing even though the express purpose of the disciplinary hearing was to determine whether Petitioner had committed that same rape. The court went on to say that "[Petitioner's] guilt has nothing to do with whether or not he gets to present a defense at his hearing." Later on cross-examination, when the State asked Petitioner if he had notice of the criminal case against him, Petitioner objected. The court sustained the objection, stating that "information related to the criminal trial was separate from the information regarding the disciplinary hearing."

{26}    The court's view of the criminal convictions, though accurate perhaps with respect to the due process analysis, is simply unsustainable as it pertains to the relief the court granted to Petitioner. Ordering good time restored and the disciplinary record expunged—all because Petitioner could no longer receive a fair hearing to establish a point of evidence that had already been conclusively established by other, irrefutable means—is unexplainable in this context and constitutes a clear abuse of discretion. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal citations and quotation marks omitted).

**CONCLUSION**

**{27}** For these reasons, we reverse the district court, dismiss Petitioner's writ of habeas corpus, and reinstate the sanctions imposed by NMCD.

**{28}** **IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**PAUL J. KENNEDY, Justice**

**Topic Index for _Perry v. Moya_, No. 32,938**

**APPEAL AND ERROR**
Harmless Error
Standard of Review

**CONSTITUTIONAL LAW**
Due Process

**CRIMINAL LAW**
Criminal Sexual Penetration
Witness Intimidation

**CRIMINAL PROCEDURE**
Corrections
Cross-examination
Due Process
Good Time
Writ of Habeas Corpus