The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number:**

**Filing Date:** March 13, 2023

**NO. S-1-SC-38452**

**STATE OF NEW MEXICO**,

Plaintiff-Appellant,

v.

**DERRICK ROMERO**,

Defendant-Appellee

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
Melissa A. Kennelly, District Judge

Hector H. Balderas, Attorney General
Van Snow, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Charles D. Agoos, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**BACON, Chief Justice.**

{1} The primary issue in this case concerns a district court's inherent common law authority to correct a sentence that is illegal due to clear error. Defendant-Appellee Derrick Romero (Appellee) pleaded guilty to second-degree criminal sexual penetration (CSP), contrary to NMSA 1978, Section 30-9-11(E)(1) (2009). In the first judgment and sentence (J&S), the district court erred in ordering that Appellee serve two years of parole, resulting in an unlawfully short period of mandatory parole. Thirteen days later, the district court ostensibly corrected the sentencing error by entering a second amended J&S, which replaced Appellee's parole period of two years with five-to-twenty years. Both of these parole periods were illegal sentences, however, as NMSA 1978, Section 31-21-10.1(A)(2) (2007), requires a sex offender convicted of CSP in the second degree to serve an "indeterminate period of supervised parole for . . . not less than five years and up to the natural life of the sex offender."

{2} Appellee challenged the revised parole period of five-to-twenty years in his Amended Petition for Writ of Habeas Corpus. The district court relied on *State v. Torres*, 2012-NMCA-026, ¶ 37, 272 P.3d 689, which acknowledged Rule 5-801(A) NMRA (2009), a former rule applicable to the district courts both in *Torres* and here,

as having "abrogated the common law principle that a district court retained inherent jurisdiction to correct illegal sentences." Under this abrogation conclusion in *Torres*, the district court here determined that it had had no jurisdiction to correct the illegal parole sentence in the first J&S and accordingly granted Appellee's habeas petition, thereby vacating the second amended J&S and reinstating the original two-year parole period. Here, Plaintiff-Appellant State of New Mexico (State) appeals that grant.

{3}     The State argues that this Court should either remand for imposition of the statutory five-years-to-life parole period, reverse the district court under a holding that NMSA 1978, Section 39-1-1 (1917) provided a separate statutory basis from Rule 5-801 for the second amended J&S, or overrule *Torres* to hold that district courts retain their common law authority to correct illegal sentences. In addition, the State argues that none of these outcomes would create a basis for Appellee to withdraw his plea.

{4} We hold that historical changes leading to Rule 5-801 (2009) (former Rule 5-801)[1] did not remove a district court's common law jurisdictional authority to correct an illegal sentence. Thus, we overrule *Torres* in that regard. Under this holding, we reverse the district court's grant of the writ of habeas corpus and remand to the district court to impose the statutorily required parole sentence. We further direct the Rules of Criminal Procedure for State Courts Committee to clarify the length of time in which a district court retains the relevant jurisdiction to correct an illegal sentence in accordance with this opinion. Finally, under *Boykin v. Alabama*, 395 U.S. 238 (1969), and Rule 5-303 NMRA, we hold that Appellee is entitled to an opportunity for plea withdrawal.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

{5} Appellee was charged by criminal information in 2010, and he pleaded guilty to CSP in the second degree ("use of force or coercion on a child thirteen to eighteen

---

[1]Subsection A of former Rule 5-801—and of its predecessor Rule 5-801 NMRA (1992)—allows that a district court "may correct an illegal sentence at any time" pursuant to habeas corpus proceedings while Subsection B of both rules specifies procedures for "motions to reduce a sentence." But the title and text of the two successor amendments, Rule 5-801 NMRA (2014) and the current Rule 5-801 NMRA (2016), limit these more recent rules solely to procedures for "motions to reduce a sentence." The committee commentary on all four rule amendments identifies Rule 35 of the Federal Rules of Criminal Procedure as the historic reference for a district court's authority to "modify a sentence."

years of age"), contrary to Section 30-9-11(E)(1). On May 17, 2011, the district court conducted a hearing on the plea agreement. At the outset of the plea hearing, the prosecutor at the judge's prompting recited "[t]he agreement as to sentencing." Notably, the only mention of parole in this recitation consisted of the agreement that probation would run concurrent with parole.

{6}    Subsequent to the recitation of plea terms, the district court conducted a colloquy with Appellee which demonstrated the plea was knowing and voluntary, and the court accepted the plea agreement. No mention was made as to the length of the parole period until after the parties and court accepted the announced terms of the plea agreement. The court's oral pronouncement of the sentence specified an incorrect parole period of two years, whereas the applicable statute required a parole period of five years to life for the offense of CSP in the second degree. *See* § 31-21-10.1(A)(1)-(2).

{7}    The district court filed the Plea and Disposition Agreement on May 18, 2011. Under the "TERMS" heading, the agreement states, "This agreement is made subject to the following [six] conditions." As in the oral recitation of the plea terms, the six written conditions only mention parole in the context of the agreement for probation to run concurrent with parole. Appellee's signature appears below those conditions. A subsequent page of the agreement under "DISTRICT COURT APPROVAL"

4

specifies "a mandatory TWO (2) YEARS on parole on the second degree felony count."

{8}     Also on May 18, 2011, the district court entered its order of Judgment, Partially Suspended Sentence and Commitment (original J&S). The original J&S included that Appellee had "been convicted by a plea and disposition agreement" and that Appellee's nine-year sentence of incarceration would "be followed by a TWO (2) YEAR parole period."

{9}     Thirteen days later, on May 31, 2011, the district court entered the second amended J&S,[2] which included the ostensible correction that Appellee's nine-year sentence of incarceration would "be followed by a FIVE (5) to TWENTY (20) YEAR parole period."

{10}     In 2018,[3] Appellee filed a petition for writ of habeas corpus followed by two amended petitions. The district court held a hearing on the second amended habeas petition on December 3, 2019.

{11}     On June 22, 2020, the district court granted Appellee's petition. As discussed further subsequently herein, the court's decision and order relied on the abrogation

---

[2]A first amended J&S was entered on May 24, 2011, to correct the date of transport to the Department of Corrections.

[3]We omit intervening procedural history that is not relevant to this proceeding.

conclusion in *Torres*, 2012-NMCA-026, in determining that "the district court had no jurisdiction under former Rule 5-801(A) to amend the [original J&S] for the purpose of increasing the parole period to conform with the law." In support of its decision, the district court quoted *Torres*, 2012-NMCA-026, ¶ 17: "'[I]t is apparent that the Rules Committee intended to strictly limit the district court's jurisdiction to correct illegal sentences to only habeas corpus-based motions [filed by the person in custody or under restraint] under Rule 5-802 [NMRA].'" The district court concluded that it "must grant the [p]etition and reinstate the original illegal sentence," relying on *Torres*, 2012-NMCA-026, ¶ 39, and *State v. Tafoya*, A-1-CA-34599, mem. op. ¶ 19 (N.M. Ct. App. July 23, 2019) (nonprecedential)—cases remanded to the district courts for reinstatement of illegal sentences. Under that conclusion, the district court order granted the petition, invalidated and voided the second amended J&S, and reinstated the original J&S.

{12}     The State timely appealed pursuant to Rule 5-802(N)(1) and Rule 12-102(A)(3) NMRA.

**II.     DISCUSSION**

{13}     We begin by analyzing the holding in *Torres* that former "Rule 5-801(A) . . . abrogated the common law principle that a district court has inherent and unlimited jurisdiction to correct illegal sentences." 2012-NMCA-026, ¶ 37. We then apply our

6

conclusion therein to the district court's grant of Appellee's petition for writ of habeas corpus. Finally, we analyze whether changes to his parole sentence entitle Appellee to an opportunity to withdraw his plea.

**A.      *Torres* is overruled regarding abrogation of a district court's jurisdiction to correct an illegal sentence**

{14}    Because the district court relied heavily on *Torres* in granting Appellee's petition, we first address whether the jurisdictional holding in *Torres* was correctly decided. "[T]he question of whether a [district] court has jurisdiction in a particular case is a question of law that we review de novo." *Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 10, 142 N.M. 786, 171 P.3d 300. "We have the ultimate authority to fashion, adopt, and amend rules of procedure by virtue of the authority granted to this Court in Article III, Section 1 and Article VI, Section 3 of the New Mexico Constitution." *State v. Pieri*, 2009-NMSC-019, ¶ 19, 146 N.M. 155, 207 P.3d 1132. Therefore, because *Torres* had the effect of modifying a district court's jurisdiction under former Rule 5-801, we may properly address its continued validity.

{15}    The State makes two arguments that the *Torres* Court erred in concluding that a district court's common law jurisdiction to correct illegal sentences was abrogated by historic changes to Rule 5-801. *See Torres*, 2012-NMCA-026, ¶ 17. First, the State argues that *Torres* "minimized important developments in [federal] Rule 35," Fed. R. Crim. P. 35 (Rule 35), supporting the proposition that "New Mexico courts

7

retained at least a limited authority to fix obvious errors until the time for taking an appeal expired." Second, the State argues that *Torres* "improperly held that Rule [5-]801 abolished a well-established provision of the common law by implication," violating the *express abrogation* requirement established in *Sims v. Sims*, 1996-NMSC-078, ¶ 23, 122 N.M. 618, 930 P.2d 153.

{16}    In opposition, Appellee makes two arguments that *Torres* need not be overruled. First, erroneously claiming that the State's argument focuses on "changes in the federal clerical error rule," Appellee argues that *Torres* is inapplicable to that issue "because the illegal sentence [here] was not clerical." We note that this mischaracterization conflates the State's *clear error* argument with a *clerical error* argument that has not been made. A clerical error argument would fall under the purview of Rule 5-113(B) NMRA, not Rule 5-801. Because Appellee's first argument does not address the State's position, we do not consider it further. *State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 ("[T]he appellate court does not review unclear or undeveloped arguments."). Second, Appellee implicitly argues under stare decisis that the relevant holding in *Torres* abides with this Court's intent in promulgating Rule 5-801 and that the State's claim under *Sims* does not meet the State's burden to overturn the settled precedent of *Torres*.

**{17}** Holding "that the district court did not have jurisdiction to correct [the d]efendant's illegal sentence," our Court of Appeals in *Torres* "therefore remand[ed] to the district court to reinstate [the d]efendant's sentence as originally imposed." 2012-NMCA-026, ¶ 1. In support of its holding, the *Torres* Court provided a jurisdictional analysis of Rule 5-801(A) that included "the context of its history and background." *Torres*, 2012-NMCA-026, ¶ 17. That jurisdictional analysis resulted in the following erroneous conclusion in *Torres*: "Since the amendments of 1984, federal case law and legislation have made clear that it was Congress's specific intent to remove any historical common law jurisdiction the federal district courts once enjoyed with respect to correction of illegal sentences" pursuant to Rule 35. *Torres*, 2012-NMCA-026, ¶ 24. The *Torres* Court compounded its error by further concluding that, because our Rule 5-801(A) "has closely tracked" Rule 35(a), the New Mexico rule "reflects a clear intent to strictly limit the district court's jurisdiction to habeas corpus proceedings to correct an illegal sentence." *Torres*, 2012-NMCA-026, ¶ 27. We now summarize the *Torres* Court's historical analysis and explain the errors in both conclusions.

**{18}** The *Torres* Court traced the relationship of Rule 5-801 and its predecessor Rule 57.1 SCRA (1986) to Rule 35, focusing on four significant historical rules changes. First, *Torres* noted the 1944 adoption of federal Rule 35, which codified

9

existing common law regarding a district court's authority to set aside or alter its final judgment. 2012-NMCA-026, ¶ 18 (citing *Duggins v. United States*, 240 F.2d 479, 483 (6th Cir. 1957); *Gilmore v. United States*, 131 F.2d 873, 874 (8th Cir. 1942)). The Court stated that this authority included "indefinite jurisdiction . . . 'to correct sentences when the judgment was void, because these sentences were invalid and not final dispositions.'" *Id.* (quoting *United States v. Rico*, 902 F.2d 1065, 1067 (2d Cir. 1990)).

{19} Second, *Torres* noted this Court's 1980 adoption of Rule 57.1 "to be virtually identical to federal Rule 35, thereby codifying existing New Mexico common law." 2012-NMCA-026, ¶ 20. The Court recognized that, like federal law, our common law had been interpreted "as including an inherent jurisdiction to correct illegal sentences." *Id.*

{20} Third, *Torres* noted the federal adoption of the Sentencing Reform Act of 1984 (SRA), which included "repeal[ of] the indefinite jurisdiction principle embodied in Rule 35(a) altogether." *Torres*, 2012-NMCA-026, ¶ 21. The Court stated that "the underlying purpose of the [SRA] 'was to impose on the new sentencing system a requirement that the sentence imposed . . . would remain constant, immune from later modification.'" *Id.* (quoting *United States v. Cook*, 890 F.2d 672, 674-75 (4th Cir. 1989)). Importantly, the *Torres* Court quoted and relied

10

on *United States v. Jordan*, 915 F.2d 622, 627-28 (11th Cir. 1990), for the proposition that the SRA, rather than merely limiting the relevant jurisdiction of a district court, "'*explicitly foreclosed* [the Rule 35(a)] route for obtaining judicial review of an allegedly illegal sentence' at any time." 2012-NMCA-026, ¶ 22 (alteration in original) (emphasis added). Importantly, as we discuss subsequently herein, the advisory committee commentary on the 1991 amendments to Rule 35 implicitly rejected this interpretation in *Jordan*.

{21}    Fourth, *Torres* noted this Court's 1986 "adopt[ion of] the recommendation of the Rules Committee to repeal [Rule] 57.1(a), which had previously allowed for indefinite jurisdiction over illegal sentences." *Torres*, 2012-NMCA-026, ¶ 23. *Torres* correctly recognized that our relevant order also constituted a "comprehensive overhaul of Rule 57 [SCRA (1986)]," which included "explicitly open[ing habeas corpus as an] avenue for review of 'illegal' sentences under the scope of the rule." *Torres*, 2012-NMCA-026, ¶ 23. However, our order did not expressly limit correction of clearly illegal sentences to habeas proceedings, nor did it expressly remove a district court's jurisdiction for such correction.

{22}    We conclude that the erroneous conclusions in *Torres* discussed previously— that Congress specifically intended to *remove* a federal district court's common law jurisdiction to correct an illegal sentence and that this Court followed suit for state

11

district courts—stem from three main errors. First, the *Torres* Court did not properly consider either the 1991 amendments to Rule 35 or the circuit court cases on which those amendments relied. *See Torres*, 2012-NMCA-026, ¶¶ 18, 21-22. Second, the *Torres* Court misread *United States v. Washington*, 549 F.3d 905, 917 (3d Cir. 2008), regarding congressional abrogation of a district court's common law jurisdiction. *See* 2012-NMCA-026, ¶ 24. Third, the *Torres* Court recognized but then improperly ignored the express abrogation rule in *Sims*, 1996-NMSC-078, ¶ 23. *Torres*, 2012-NMCA-026, ¶¶ 29-30. We discuss these errors in turn.

{23}  Contrary to the relevant erroneous conclusion in *Torres*, the 1991 amendments recognized that the SRA did *not* foreclose "the ability of the sentencing court to correct a sentence imposed as a result of an obvious . . . clear error, if the error is discovered shortly after the sentence is imposed." Fed. R. Crim. P. 35 advisory comm. notes (1991). The 1991 amendments "effect[ively] codifie[d]" the holdings of *Cook*, 890 F.2d 672, 675, and *Rico*, 902 F.2d 1065, 1069, that the district court retained "the inherent authority . . . to correct a sentence," notwithstanding the SRA's repeal of a district court's *indefinite* jurisdiction to correct a sentence. Fed. R. Crim. P. 35 advisory comm. notes (1991).

{24}  In *Cook*, the Fourth Circuit "recognize[d] the inherent power in a [district] court to correct an acknowledged and obvious mistake," distinguishing the SRA's

focus on "*appellate* review of sentences." 890 F.2d at 674-75 (emphasis added). Similarly in *Rico*, the Second Circuit found "no mention in the legislative history [of the SRA] of any diminution in the district court's inherent power to correct sentences . . . [and] no indication that [Congress] intended to repudiate this long-standing authority of district courts." 902 F.2d at 1067. In affirming *Cook* and *Rico*, the 1991 amendments implicitly rejected the contrary 1990 holding of the Eleventh Circuit on which *Torres* relied. *See Torres*, 2012-NMCA-026, ¶ 22 (quoting *Jordan*, 915 F.2d at 627-28).

{25} By not properly considering the 1991 amendments to Rule 35, the *Torres* Court reached its erroneous conclusion regarding the scope of the SRA's repeal of the federal rule. *See Torres*, 2012-NMCA-026, ¶ 22. In turn, the *Torres* Court misinterpreted the scope of this Court's 1986 order. *See id.* ¶ 23. To the extent that this Court's 1986 order followed the SRA's lead, our repeal of Rule 57.1(a) similarly did not remove a district court's inherent authority to correct a sentence.

{26} The *Torres* Court also erred in reading *Washington* as supporting the proposition that Congress abrogated the relevant power of a district court. *See* 2012-NMCA-026, ¶¶ 24, 29 (citing *Washington*, 549 F.3d at 911, 917). *Washington* did not involve a district court's power to correct a sentence that would constitute *clear error* but rather concerned a district court's power to correct a sentence that was

13

*procured by fraud*. *See* 549 F.3d at 912, 914. The Third Circuit in *Washington* reversed the district court's finding, upon discovery of the defendant's true identity, that the court "had the inherent power to vacate judgments procured by fraud." *Id.* at 909 (internal quotation marks and citation omitted). The *Washington* Court concluded that any such inherent power to correct a sentence resulting from fraud had been abrogated by Congress, whereas the 1991 amendments to Rule 35 recognized the narrow corrective power of a district court in "cases in which an obvious error or mistake has occurred in the sentence." *Washington*, 549 F.3d at 914, 916. The foregoing makes clear that the inherent power of a district court considered in *Washington* is distinct from the inherent power considered by *Torres* and by this Court, and thus *Washington* does not support the holding in *Torres*.

{27}    The *Torres* Court ultimately erred in not following "our long-standing rule that 'only if a statute so provides with *express language or necessary implication* will New Mexico courts be deprived of their inherent equitable powers.'" 2012-NMCA-026, ¶ 29 (emphasis added) (quoting *Sims*, 1996-NMSC-078, ¶ 30). In *Sims*, we explained:

> The comprehensiveness of [a New Mexico court's] equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.

> "The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction."

1996-NMSC-078, ¶ 30 (citation omitted).

{28} The *Torres* Court acknowledged that the purported abrogation of a district court's "inherent common law jurisdiction . . . over correction of illegal sentences" was "not expressly stated" in changes to the rule. *Torres*, 2012-NMCA-026, ¶¶ 29-30. Despite the absence of express abrogation language, the *Torres* Court nonetheless held "that the Rules Committee meant to defeat the broad jurisdiction embodied in the common law by repeatedly narrowing Rule 5-801(A)." *Torres*, 2012-NMCA-026, ¶ 30. To the extent that the *Torres* Court concluded from such narrowing that the relevant inherent authority of sentence correction was abrogated by *necessary implication* under *Sims*, we clarify that our changes to Rule 5-801(A), as we have discussed, did not foreclose that authority. *See Torres*, 2012-NMCA-026, ¶¶ 29-30. Accordingly, there was no such necessary implication of abrogation. Under *Sims*, the *Torres* Court erred in concluding that our changes to Rule 5-801 implicated abrogation of the relevant common law jurisdiction where such a principle appeared neither in our express language nor as a necessary implication of those changes. *See Torres*, 2012-NMCA-026, ¶ 29.

{29} Applying the foregoing analysis, we hold that historical changes to Rule 5-801(A) did not remove a district court's common law jurisdictional authority to

15

correct a sentence that is illegal due to clear error. *Torres* is overruled to the extent that it holds otherwise. Under our holding, we do not reach the State's argument that Section 39-1-1 provided a separate statutory basis from Rule 5-801 for the district court to amend its sentence. Additionally, we direct the Rules of Criminal Procedure for State Courts Committee to clarify the time period during which a district court retains such jurisdiction in accordance with this opinion.[4]

**B.     The district court had jurisdiction thirteen days after the original J&S to correct the illegal sentence of parole, but the district court on remand must impose the parole sentence required by Section 31-21-10.1(A)(2)**

{30}     We next apply our holding above to the district court's grant of the writ of habeas corpus. This Court reviews the legal conclusions of a district court in a habeas proceeding de novo. *Lukens v. Franco*, 2019-NMSC-002, ¶ 15, 433 P.3d 288.

{31}     Under our holding, we reverse the district court's grant of the writ of habeas corpus, as the district court had jurisdiction thirteen days after the original J&S to

---

[4]We note the principle adopted by the 1991 amendments to Rule 35

> that the time for correcting [obvious arithmetical, technical, or other clear errors] should be [restricted to] the time for appealing the sentence to reduce the likelihood of jurisdictional questions in the event of an appeal and to provide the parties with an opportunity to address the court's correction of the sentence, or lack thereof, in any appeal of the sentence.

Fed. R. Crim. P. 35 advisory comm. notes (1991).

16

correct the clearly illegal parole sentence of two years. However, while reversal here would otherwise reinstate the second amended J&S, we cannot reinstate the parole sentence therein of five-to-twenty years as it also constitutes a clearly illegal sentence. *See* § 31-21-10.1(A)(2) (requiring that a sentence for second-degree CSP "shall include . . . an indeterminate period of supervised parole for a period of . . . not less than five years and up to the natural life of the sex offender").

{32} An illegal sentence is void and a nullity. *See State v. Peters*, 1961-NMSC-160, ¶ 5, 69 N.M. 302, 366 P.2d 148 ("The . . . sentence . . . being unauthorized by law . . . was null and void, and [the district court] was warranted in disregarding it as mere surplusage."); *see also Rico*, 902 F.2d at 1067 ("[U]nder common law a district court was free at any time to correct sentences when the judgment was void, because these sentences were invalid and not final dispositions." (internal quotation marks omitted)). In *State v. Miller*, 2013-NMSC-048, ¶ 36, 314 P.3d 655, we explained in the plea context that a "court must . . . be mindful of our sentencing statutes and cannot impose an illegal sentence. If the sentence in an accepted plea is illegal, [it] cannot be imposed by a court." *Id*.; *see State v. Mares*, 1994-NMSC-123, ¶ 10, 119 N.M. 48, 888 P.2d 930 ("This Court has long held that the [district] court may impose only sentences which are authorized by law."); *State v. Lucero*, 1944-NMSC-036, ¶ 17, 48 N.M. 294, 150 P.2d 119 ("[W]e conclude that the sentence . . .

17

was in excess of punishment warranted by law . . . and is therefore void."); *see also Sneed v. Cox*, 1964-NMSC-250, ¶ 8, 74 N.M. 659, 397 P.2d 308 ("[S]entences which are unauthorized by law are null and void."), abrogated on other grounds as recognized by *State v. Sublett*, 1968-NMCA-001, ¶ 22, 78 N.M. 655, 436 P.2d 515.

{33} Under these precedents, we are unauthorized to reinstate the clearly illegal sentence of parole in the second amended J&S. Instead, we remand to the district court for imposition of the parole period required by Section 31-21-10.1(A)(2).

{34} We note that the district court order cited two cases in support of the proposition that reinstatement of an illegal sentence can be proper, neither of which is persuasive here. The order first cites *Torres*, 2012-NMCA-026, ¶ 39, wherein the Court of Appeals remanded for reinstatement of the defendant's illegal prior sentence under the very abrogation principle which we overrule in this opinion. The order also cites *Tafoya*, A-1-CA-34599, mem. op. ¶ 19, which is an unpublished memorandum opinion. This Court subsequently quashed the State's petition for writ of certiorari in *Tafoya* based on mootness and specifically "ordered that the Court of Appeals [m]emorandum [o]pinion . . . SHALL NOT be cited as persuasive authority." *State v. Tafoya*, S-1-SC-37872, Dispositional Order to Quash ¶ 16 (N.M. Sept. 2, 2021). In sum, these cases do not provide compelling support for a court's reinstatement of an illegal sentence.

{35}    Citing *Lopez v. LeMaster*, 2003-NMSC-003, ¶ 17, 133 N.M. 59, 61 P.3d 185, Appellee argues that while "New Mexico courts have broad authority to order discretionary relief through . . . writs of habeas corpus . . . , an order increasing a criminal sentence is not among the remedies available in a collateral habeas corpus proceeding." As *Lopez* states explicitly, however, "[a] court may not ignore statutes, rules, and precedents when fashioning such a remedy." *Id.* Under this foundational principle, we are not at liberty to ignore the parole sentence required by Section 31-21-10.1(A)(2). Contrary to Appellee's characterization, imposition of the statutorily required parole period constitutes replacing the nullity of the illegal parole sentence in the second amended J&S, not increasing an otherwise valid sentence.

**C.    Appellee is entitled to an opportunity for plea withdrawal**

{36}    Finally, we analyze whether a change to his parole sentence entitles Appellee to an opportunity to withdraw his plea under his constitutional right to due process. We analyze this issue under the Fourteenth Amendment to the United States Constitution, which Appellee argues under federal due process cases without specifying additional due process rights under the New Mexico Constitution.

{37}    The parties disagree as to whether Appellee accepted the plea knowingly and voluntarily. The State points to the district court "confirm[ing] that [Appellee] understood the range of possible penalties associated with his plea." Relatedly, the

19

State argues that Appellee has not shown prejudice, that "the district court established that he entered the agreement knowingly and voluntarily," and that, under *United States v. Timmreck*, 441 U.S. 780, 785 (1979), "habeas relief is unavailable when 'all that is shown is a failure to comply with the formal requirements' of the federal counterpart to Rule 5-303." In response, Appellee argues that "[p]rejudice from an increased sentence is self-evident" and that "[t]he record in this case does not reflect any affirmative, voluntary, knowing, and intelligent waiver by [Appellee] of his fundamental due process rights." We infer from his waiver argument that Appellee contends that imposition of the more onerous sentence constituted a violation of fundamental due process. To the extent that the State suggests Appellee abandoned this issue on appeal, we invoke our right to review an issue involving the fundamental rights of a party. *See* Rule 12-321(B)(2)(d) NMRA.

{38} The parties also dispute whether the two-year parole sentence was among the terms of the negotiated plea agreement and thus would constitute part of the benefit of Appellee's bargain. The State argues that "[t]he plea agreement unambiguously did not address the length of parole" and that the two-year parole sentence was a finding made by the district court separate from and subsequent to the parties' negotiated plea agreement. The State further argues that correction of Appellee's

20

parole sentence did not violate due process where parole periods are statutorily mandated and "cannot be the subject of bargaining." In response, Appellee asserts that "the terms of the written plea agreement expressly included a two-year parole sentence" and argues that "the imposition of an enhanced parole sentence violates the binding plea agreement between the State and [Appellee]." Appellee also argues that the "parole sentence was clearly part of the bargain in light of the disproportionate impact the [five- to twenty-year parole] sentence had on the overall agreement."

{39}    The parties' foregoing due process arguments fall under the

> two separate, though closely related, constitutional challenges that may be made [when seeking relief from a guilty plea]: (1) that the plea of guilty was not made voluntarily and with full knowledge of the consequences, and (2) that [the] defendant did not receive the benefit of the bargain [the defendant] made with the [s]tate when [the defendant] pled guilty.

*People v. Whitfield*, 840 N.E.2d 658, 663, 673 (Ill. 2005) (holding that the defendant's "constitutional right to due process and fundamental fairness was violated" where he was never advised at the plea hearing that mandatory parole would be imposed and where subsequent imposition thereof resulted in a more onerous sentence). A due process challenge to the plea being knowing and voluntary "derives from *Boykin*, . . . 395 U.S. [at 242-43 & n.5]," whereas a due process "'benefit of the bargain' claim finds its roots in *Santobello v. New York*, 404 U.S.

257, 262 . . . (1971)." *Whitfield*, 840 N.E.2d at 663-64 ("*Boykin* and *Santobello* deal with two different aspects of a plea—its acceptance and its implementation."). Because *Boykin* and *Santobello* govern the parties' arguments, we provide the applicable principles of both cases despite the parties' failure in this appeal to apply *Boykin*.

{40}  In *Boykin*, the United States Supreme Court held that the record for acceptance of a guilty plea must affirmatively show that the plea was "intelligent and voluntary."[5] 395 U.S. at 242, 243 n.5 (identifying "a defendant's guilty plea [that] is not equally voluntary and knowing" as a "violation of due process and . . . therefore void"). The *Boykin* Court noted that a defendant's "waiver of . . . three important federal [constitutional] rights"—the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers—cannot be presumed from a silent record. *Id.* at 243. "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure [the accused] has a full

---

[5]We recognize "knowing" and "intelligent" as synonymous and interchangeable for purposes of pleas. *See United States v. Dominguez*, 998 F.3d 1094, 1102 n.5 (10th Cir. 2021) ("In . . . our precedent, the two terms 'knowing' and 'intelligent' frequently have traveled together, even though we have not made a meaningful effort to attribute distinct meanings to them."), *cert. denied*, 142 S. Ct. 2756 (2022).

22

understanding of what the plea connotes and of its consequence." *Id.* at 243-44. In New Mexico, "Rule 5-303 NMRA essentially codified *Boykin* . . . and requires an affirmative showing on the record that a guilty plea was voluntary and intelligent." *State v. Yancey*, 2019-NMSC-018, ¶ 12, 451 P.3d 561 (brackets, internal quotation marks, and citations omitted).

{41} In *Santobello*, the United States Supreme Court noted that "'plea bargaining[]' is an essential component of the administration of justice" but one which "presuppose[s] fairness in securing agreement between an accused and a prosecutor." 404 U.S. at 260-61. The *Santobello* Court stated that as a "safeguard[] to insure the defendant what is reasonably due" under a plea agreement, a "constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262. We note that this Court has quoted the latter language in *Santobello* in multiple cases. *See, e.g.*, *State v. King*, 2015-NMSC-030, ¶ 18, 357 P.3d 949; *Pieri*, 2009-NMSC-019, ¶¶ 15, 33.

{42} The parties' arguments "require[] us to evaluate constitutional principles, statutes, and the rules of criminal procedure. Our review of these matters is de novo." *Yancey*, 2019-NMSC-018, ¶ 11. Whether a plea is knowing and voluntary under these authorities "must be assessed from the totality of the circumstances." *Id.* ¶ 1

23

(citing *United States v. Rollings*, 751 F.3d 1183, 1188 (10th Cir. 2014)); *accord Garcia v. State*, 2010-NMSC-023, ¶ 50, 148 N.M. 414, 237 P.3d 716.

**1.     The two-year parole sentence was not a term of the plea agreement, and correction of that sentence does not deprive Appellee of the benefit of his bargain**

{43}     We begin our discussion by clarifying the critical distinction between a plea agreement and an accepted plea. "A plea agreement is a unique form of contract the terms of which must be interpreted, understood, and approved by the [district] court." *Mares*, 1994-NMSC-123, ¶ 12. A plea agreement is negotiated between the defendant and the prosecution, and the parties may "negotiate the terms of a plea agreement to the full extent allowed by law." *Id.* ¶ 11; *see id.* ¶ 17 ("[A] plea agreement may be the product of negotiation between the prosecutor and the defense."); *see State v. Taylor*, 1988-NMSC-023, ¶ 23, 107 N.M. 66, 752 P.2d 781 ("A defendant may enter into an agreement with the state to plead guilty to any proper condition and the state may recommend a particular sentence to the court."), *overruled on other grounds by Gallegos v. Citizens Ins. Agency*, 1989-NMSC-055, ¶ 28, 108 N.M. 722, 779 P.2d 99. "[T]he district court judge [shall] not be a participant in any plea negotiations[, and] '[t]he judge's role is explicitly limited to acceptance or rejection of the bargain agreed to by counsel for the state, defense

counsel, and [the] defendant.'" *Miller*, 2013-NMSC-048, ¶ 12 (quoting Rule 5-304 NMRA (2010), comm. cmt.).[6]

{44} While "a [district] court has broad discretion to accept or reject a plea agreement," *Mares*, 1994-NMSC-123, ¶ 10, the court cannot accept the agreement until additional process under Rule 5-303 ensures that the defendant has entered into the plea knowingly and voluntarily. The requirements of Rule 5-303(F) include that the court "address[] the defendant personally in open court, informing the defendant of and determining that the defendant understands . . . the nature of the charge to which the plea is offered . . . and the maximum possible penalty provided by law for the offense to which the plea is offered." Rule 5-303(F)(1)-(2). Under Rule 5-303(G), "The court shall not accept a plea of guilty . . . without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement."

{45} Under these authorities, several principles emerge that are relevant to the parties' arguments here. First, the parties' broad latitude to negotiate the terms of a

---

[6]Consistent with committee commentary on the 2010 amendment, the body of the 2022 amendment further provides that the "judge who presides over any phase of a criminal proceeding shall not participate in plea discussions" while allowing that a judge not so presiding "may be assigned to participate in plea discussions to assist the parties in resolving a criminal case in a manner that serves the interests of justice." Rule 5-304(A)(1) NMRA (2022).

plea agreement cannot result in a term that is contrary to law. *See Mares*, 1994-NMSC-123, ¶ 11. Accordingly, even if the parties here had negotiated a two-year parole sentence, their authority to negotiate would not have rendered that illegal sentence lawful or enforceable. Second, the applicable rule in this case required the district court to play no role in determining the negotiated terms of a plea agreement, notwithstanding the court's broad latitude to accept or reject those terms. Rule 5-304 (2010), comm. cmt. Thus, a term that is established in the first instance by the court is presumptively not a term of the plea agreement. Third, the negotiated terms of a plea agreement do not necessarily include all components of the accepted plea. For example, parties could solely negotiate the term of incarceration and leave all other sentencing determinations to the district court, subject to the court assuring the defendant's understanding of the terms and consequences of the plea where a defendant pleads guilty. *See* Rule 5-303(F). Finally, the knowing and voluntary requirement under Rule 5-303(F)-(G) cannot be circumvented or waived for a plea of guilty. *Cf.* Rule 5-303(J). Where the advisement requirements of Rule 5-303 are not satisfied, such a lack of due process "presumptively affects [the] defendant's substantial rights and renders the plea unknowing and involuntary." *State v. Garcia*, 1996-NMSC-013, ¶¶ 22-23, 121 N.M. 544, 915 P.2d 300 ("[T]he defendant must

understand the consequences of his plea at the time the plea is taken." (emphasis omitted)).

{46} The record in this case is clear that, contrary to Appellee's representation, the negotiated terms of the plea agreement did not include the length of the parole period and that the two-year parole period was established in the first instance by the district court. At the plea hearing, the length of the parole period was not included in the terms of the plea agreement as read by the prosecution, and the two-year parole period was announced initially by the court during the subsequent Rule 5-303 colloquy. Similarly in the Plea and Disposition Agreement, the length of the parole period is not listed in the six terms of the plea agreement signed by Appellee. The two-year parole sentence appears for the first time in the district court's subsequent findings supporting that the accepted plea was knowing and voluntary.

{47} Because the two-year parole sentence was not a term of the plea agreement, correction of that illegal sentence does not constitute a change to the plea agreement. It follows logically that imposition of a more onerous indeterminate parole sentence does not deprive Appellee of the benefit of his bargain, as he did not bargain concerning the length of parole. Accordingly, neither the district court's purported parole sentence correction of five-to-twenty years nor imposition on remand of the five-years-to-life parole period can be construed as a broken promise of the

prosecution. Because *Santobello* governs such broken promises of a plea agreement, the parties' arguments under *Santobello* are inapposite.

{48}     Appellee attempts nonetheless to bring the district court's sentencing error within that scope, quoting *United States v. Walker*, 98 F.3d 944, 946 (7th Cir. 1996), for the proposition that "'*Santobello* itself involved a breach of a plea agreement by the prosecutor rather than by the judge, but the remedial implications are similar.'" Appellee's argument does not avail, first and foremost because, as just discussed, the district court's purported sentence correction did not involve a breach of the plea agreement. Further, we decline any implicit invitation to extend *Santobello* to encompass errors by a sentencing court at a plea hearing. *See Pieri*, 2009-NMSC-019, ¶ 28 ("It is now clear that *Santobello* only requires that the State fulfill the promises it makes in plea agreements.").

**2.     Appellee is entitled to an opportunity to withdraw his plea under *Boykin* and Rule 5-303**

{49}     The record is clear that the accepted plea in this case involved Appellee's knowing and voluntary plea to a maximum possible penalty that included a parole sentence of two years. Under this record, imposition by the district court of either indeterminate parole period—whether of five-to-twenty years in the second amended J&S or of five years to life on remand—has not occurred under a knowing and voluntary plea. Stated differently, the record does not affirmatively show that

28

Appellee understood that the range of possible penalties associated with his plea included either of the indeterminate parole sentences.

{50} Based on the foregoing, we agree with Appellee that he was denied due process, but for reasons other than those offered by the parties. The fundamental flaw with the process that Appellee received is that he was completely deprived of his right to a knowing and voluntary plea when his sentence was changed in the second amended J&S to include more onerous consequences than those explained at the plea hearing. Under *Boykin* and Rule 5-303, due process required an additional hearing at which Appellee would have been advised of the increased consequence, a five- to twenty-year parole sentence, with an opportunity for Appellee to withdraw his plea. *See State v. Jones*, 2010-NMSC-012, ¶ 52, 148 N.M. 1, 229 P.3d 474 ("A plea bargain stands or falls as a unit." (brackets, internal quotation marks, and citation omitted)); *see also Garcia*, 1996-NMSC-013, ¶¶ 23-24 (granting plea withdrawal as a proper remedy where the record did not clearly demonstrate substantial compliance with Rule 5-303).

{51} On remand, due process similarly requires imposition of the statutorily mandated parole sentence to occur in an additional Rule 5-303 hearing, wherein the district court shall advise Appellee as to his increased maximum possible penalty and Appellee shall have an opportunity to withdraw his plea. Without such

additional process, Appellee's plea under our ruling herein cannot be knowing and voluntary.

{52}     We reject the State's argument that the district court's colloquy established that Appellee "understood the range of possible penalties associated with his plea." The record here demonstrates that the maximum possible penalty was never explained to Appellee, and thus the district court's finding that Appellee's plea was knowing cannot satisfy the requirements of Rule 5-303. We also agree with Appellee that prejudice here is "self-evident" where Appellee's plea consequences increase under either indeterminate parole period.

{53}     In addition we reject the State's argument under *Timmreck*, 441 U.S. at 785, as the constitutional considerations implicated here constitute much more than merely "'a failure to comply with the formal requirements'" of due process. In *Timmreck*, the United States Supreme Court found only a technical violation of Rule 11 of the Federal Rules of Criminal Procedure where the district court at the plea hearing "failed to describe the mandatory special parole [period] of at least [three] years" because the defendant's ultimate sentence of ten years of imprisonment plus five years of parole was still "within the maximum [fifteen years of imprisonment] described to him" at the plea hearing. *Id.* at 782-83. Where the changed sentence did not involve more onerous consequences, the *Timmreck* Court found no error which

30

"resulted in a complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure." *Id.* at 784 (internal quotation marks and citation omitted). In contrast here, the five- to twenty-year parole period implicated more onerous consequences than the maximum possible penalty in the district court's plea advisement and in its Plea and Disposition Agreement, and thus the due process violation was substantive and not merely technical.

## III. CONCLUSION

{54} We hold that *Torres* is overruled regarding abrogation of a district court's common law jurisdictional authority to correct an illegal sentence. Under this holding, we reverse the district court and remand for imposition of the statutorily required parole sentence. We direct the Rules of Criminal Procedure for State Courts Committee to clarify the length of time that a district court retains jurisdiction to correct an illegal sentence in accordance with this opinion. Finally we hold, consistent with the additional Rule 5-303 hearing required by due process, that Appellee is entitled to an opportunity for plea withdrawal.

{55} **IT IS SO ORDERED.**

_____

**C. SHANNON BACON, Chief Justice**

31

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Justice**

_____
**DAVID K. THOMSON, Justice**

_____
**JULIE J. VARGAS, Justice**

_____
**BRIANA H. ZAMORA, Justice**